Sonny Carl MUNN *v.* STATE of Arkansas

CR 75-5                    521 S.W. 2d 535

Opinion delivered April 21, 1975

*John Lineberger* and *John Barry Baker,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Robert A. Newcomb,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. This case arose from a head on collision in which two people were killed. A jury convicted appellant on two counts of involuntary manslaughter, Ark. Stat. Ann. § 41-2209 (Repl. 1964), and assessed his punishment at two years on each count in the State Department of Correction. Appellant first asserts for reversal of the judgment that the deputy clerk and the court improperly commented upon appellant's right to remain silent. We must agree as to the comment by the court.

After the jurors were selected and sworn, the following discussion occurred:

THE COURT: All of the witnesses in this case, please stand and be sworn. Defendant is now in jeopardy.

(A deputy clerk, Mrs. Shipman, asks that the defendant be sworn, along with witnesses in the case.)

MR. LINEBERGER: I think we have the right to have him sworn at a later time.

THE COURT: Sure. Sure. He doesn't have to take the stand at all if he doesn't want to.

Appellant objected and asked for a mistrial which was refused.

In *Russell* v. *State,* 240 Ark. 97, 398 S.W. 2d 213 (1966), we said:

> If the accused is to have the unfettered right to testify or not to testify he should have a correlative right to say whether or not his silence should be singled out for the jury's attention.

In *Mosby* v. *State,* 249 Ark. 17, 457 S.W. 2d 836 (1970), the trial court commented during voir dire that the jury would be instructed at the close of the trial. There the court said "[O]ne of the instructions will be concerning the situation that the defendant did testify and in the event he didn't testify concerning that situation." In holding this constituted prejudicial error, we said:

> Based upon the record before us, we cannot say whether the remarks of the court upon voir dire were invited or not. So, in that state of the record, the fact that the trial court brought appellant's silence or non-silence as a witness to the jury's attention during voir dire rather than during final instructions is of no consequence. The appellant's 'correlative right to say whether or not his silence should be singled out' was infringed upon just the same. The prerogative of so alerting the jury was exclusively within the option of the appellant.

In the case at bar, the appellant's right to testify or not to was brought to the jury's attention by the court. That unfettered right belongs to appellant. The state argues that *Russell* and *Mosby* are inapplicable because the court's remark was invited by appellant's attorney. We cannot agree. His attorney was merely stating correctly that the appellant had "the right" to be sworn later.

Appellant next asserts that the trial court erred in allow-

ing an excused witness to be recalled to the stand. Pursuant to Ark. Stat. Ann. § 43-2021 (Repl. 1964), both parties invoked the "rule." The court then excluded the witnesses from the courtroom. A policeman testified for the state. He was excused by the state "to return to his duties." However, unknown to the parties, he remained in the courtroom and heard other testimony before his presence was observed. Over appellant's objection, the officer was recalled by the state and gave additional testimony which rehabilitated his earlier testimony.

The appellant relies on our recent cases. *Reynolds* v. *State*, 254 Ark. 1007, 497 S.W. 2d 275 (1973); and *Vaughn* v. *State*, 252 Ark. 505, 479 S.W. 2d 873 (1972). The appellee responds that it was discretionary with the court in permitting the witness to testify again upon recall. *Clubb* v. *State*, 230 Ark. 688, 326 S.W. 2d 816 (1959); and *Harris* v. *State*, 171 Ark. 658, 285 S.W. 367 (1926). Suffice it to say that the witness' presence in the courtroom after testifying is not likely to occur again upon a retrial.

Appellant next asserts that the court erred in permitting an investigating officer to give his opinion as to the direction the two vehicles were traveling when they collided. There was no eyewitness to the accident. A state policeman, who investigated approximately five accidents a week for eleven years, observed the skid marks and the resting places of the vehicles involved. When asked "[W]hat did you physically observe, officer," he responded that appellant's "vehicle was traveling toward Fayetteville." In the circumstances, we cannot agree that this experienced officer's testimony, based upon his observation of the physical evidence at the scene, was speculative and invaded the province of the jury with respect to a factual issue.

Appellant next asserts that the trial court erred in allowing testimony about appellant's blood analysis. Appellant's contention is that a proper chain of custody was not proven. The blood sample was taken, sealed and labeled by a lab technician in the presence of a state police officer. The sample remained in the officer's custody until it was delivered to Lt. Karl Martens of the Springdale Police Department. Martens

testified that he put the sample in the refrigerator and stayed in the room until he made the analysis. After completion of the analysis, the vial was placed in an unlocked storage cabinet. There is no evidence of any tampering with the vial. Any access to it by others, in the circumstances, would bear only upon the credibility or weight of the evidence.

Appellant contends that the blood sample was drawn at a doctor's request and, therefore, the doctor-patient privilege prevails. Ark. Stat. Ann. § 28-607 (Supp. 1973); and *Ragsdale* v. *State*, 245 Ark. 296, 432 S.W. 2d 11 (1968). The lab technician testified that the blood sample was taken by him at a doctor's request. However, the investigating officer disputed this and testified that it was done only at his direction and in his presence. Furthermore, there is absolutely no evidence that the sample was taken for purposes of medical treatment. We find no merit in this contention.

Appellant also asserts that the state failed to prove that the blood test was performed according to methods approved by the Arkansas State Board of Health and Ark. Stat. Ann. § 75-1046 (b) and § 75-1031.1 (c) (Supp. 1973). There is evidence of substantial compliance with the Health Department rules and pertinent statutes. A qualified lab technician drew the sample. Pursuant to Arkansas State Department of Health rules (AP-210), he cleansed the skin with a non-alcoholic solution. The sample was placed into a container with an anticoagulent and sealed pursuant to AP-213. The technician, who was familiar with these rules, labeled the vial as to the time it was drawn, the date and appellant's name. AP-213. Pursuant to AP-215, the officer, who requested the sample, observed the extraction in order to testify as to authenticity. Lt. Martens refrigerated the sample when he obtained possession. AP-214. He is a certified operator and used a certified gas chromatograph for the analysis, a method approved by AP-315.

AP-210 requires that the sample be collected within two hours of the alleged offense. In this case, the most accurate testimony as to the time of the accident was 9:30 p.m. However, the victims were not administered to in the emergency room of the hospital until 11:30 p.m. The blood

sample was drawn from appellant about 12:40 a.m. Lt. Martens testified on cross-examination that the longer one waits to run the blood alcohol test the percentage of alcohol decreases. Certainly, appellee has shown substantial complience and no prejudicial error is demonstrated.

Finally, appellant asserts that the trial court erred in overruling appellant's motion for a directed verdict. In *Burks* v. *State,* 255 Ark. 23, 498 S.W. 2d 336 (1973), we reiterated our well established rule:

> . . . . a directed verdict is proper only when no fact issue exists and on appeal we review the evidence in the light most favorable to the appellee and affirm if there is any substantial evidence.

Shortly before the accident, a witness observed appellant at a liquor store. To him, appellant acted drunk. "I told the man that I didn't think that he was able to drive, and he told me to worry about my own business." The liquor store is between the site of the accident and Prarie Grove. The state policeman observed the physical evidence, as previously indicated, and testified appellant was traveling toward Fayetteville. Another witness, on cross-examination, testified that appellant told him he was on his way to Springdale, which is in the Fayetteville direction. To travel toward Fayetteville, the proper lane of travel would be the right lane. The accident, a head on crash, occurred on the left side of the highway near the shoulder. In the other car were two people, who lived at Prairie Grove, and were pronounced dead on arrival at the hospital. The weight of alcohol in appellant's blood was 0.16 percent, which is above the level considered to be a presumption that a person is intoxicated. Ark. Stat. Ann. § 75-1031.1 (a) (3) (Supp. 1973). The appellant was found within a few minutes following the accident unconscious and alone in his car which was on fire. The impact was so terrific that it left broken glass, debris and oil where it occurred. It appears from the exhibits that both cars were completely demolished. One witness testified that it took him approximately five minutes to extricate the appellant from his car.

It must be said that a jury could infer that the appellant

was alone and driving toward Fayetteville. In *Abbott* v. *State*, 256 Ark. 558. 508 S.W. 2d 733 (1974). we said:

> . . . . the question whether circumstantial evidence excludes every reasonable hypothesis other than an accused's guilt is usually for the jury, and no greater degree of proof is required where the evidence is circumstantial. (Citing cases.) It is only when circumstantial evidence leaves the jury. in determining guilt, solely to speculation and in conjecture that we hold it insufficient as a matter of law. (Citing cases.) In testing its sufficiency, we must view it in the light most favorable to the state.

We are of the view the evidence is not insubstantial as a matter of law and that it constituted a factual issue for the jury's determination.

Reversed and remanded for the error indicated.