**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Walter Dean WARING,
Defendant–Appellant.**

**Walter Dean WARING,
Movant–Appellant,**

v.

**STATE of Missouri,
Defendant–Respondent.**

**Nos. 15506, 16095.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 9, 1989.

Dee Wampler, Wampler, Wampler & Catt, Springfield (atty. on direct appeal), Nancy A. McKerrow, Columbia (atty. on post-conviction motion), for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN C. HOLSTEIN, Special Judge.

A jury found defendant guilty of the class C felony of involuntary manslaughter. § 565.024.[1] On November 2, 1987, he was sentenced, as a prior and persistent offender, to ten years' imprisonment. § 558.016.

On June 20, 1988, defendant filed a motion for relief under Rule 29.15.[2] Counsel was appointed and an amended motion was filed. Subsequently, a second amendment was made to paragraph nine of the motion. An evidentiary hearing was conducted. The court hearing the Rule 29.15 motion (hereafter referred to as the motion court) denied relief. The appeals from the judgments of the trial court and the motion court were consolidated. Rule 29.15(*l*).

Three points are raised on appeal. The first point complains that because a blood test drawn from defendant was for "medical purposes only, not at the direction of law enforcement officials after arrest," the blood sample was privileged and inadmissible. The other two points relate to the post-conviction motion. Point two claims defendant's attorney before the trial court (hereafter referred to as trial counsel) was ineffective by failing to discover evidence which would have impeached a state's witness, failing to seek a change of judge following the judge's refusal to accept a plea agreement, and failing to object to the state's use of municipal court convictions to impeach defendant. The third point asserts that the motion court failed to enter findings of fact and conclusions of law on all issues presented in the post-conviction motion. A statement of facts is necessary preliminary to addressing the issues raised.

On November 26, 1986, defendant and Richard Taylor met at Onstott's tavern in Lamar, Missouri. The two separated briefly but met again at about 7:30 p.m., went to a nearby lounge, and bought a six-pack of beer. At that time defendant was driving a 1984 Kenworth semi-trailer truck with no trailer attached. With defendant driving, the men proceeded north on Highway 71, a four-lane divided highway, toward Nevada, Missouri. Their final destination was an establishment in or near Nevada known as Lloyd's Pub. Betweeen 5:30 p.m. and their arrival at Lloyd's, the evidence showed defendant had consumed approximately four twelve-ounce containers of beer.

While in Lloyd's, defendant drank an estimated additional five beers. He and Taylor shared a table with a group of customers who arrived sometime later. One of those at the table was Elizabeth Carter. Shortly after 1:00 a.m. on November 27, defendant, Taylor, and Ms. Carter left Nevada headed south again on Highway 71 for Lamar. At the time they left, defendant was driving the semi-truck.

Taylor was a witness for the state. He testified that he had consumed enough beer that his recollection of events after leaving Lloyd's was vague. However, he clearly recalled that defendant was the driver when the truck was involved in a collision which killed Ms. Carter. Defendant testified that about three miles south of Nevada, he stopped to relieve himself. He remembered returning to the truck, but has no recollection of events following that until the accident. Defendant's only recall of the accident was that he yelled, "Watch out," and the truck hit an embankment.

The first persons to arrive at the accident scene were passers-by who stopped to give aid. The truck was resting on its top just to the south of a dirt embankment. The embankment is located south of the dead end of an outer service road which parallels Highway 71 on the east in Barton County. The truck had apparently knocked down several posts and reflectors

---

**1.** Unless otherwise indicated, references to statutes are to RSMo 1986.

**2.** Rule references are to Missouri Rules of Court (20th ed. 1989).

fixed in the ground where the road dead ends and struck the embankment before coming to rest on its top. One of the passers-by broke the window on the driver's side. A male emerged through the opening, ran around the side of the truck, and continued to run to the north along the service road. Sometime later defendant was found lying in the grass next to the road about 100 yards north of the wrecked truck.

Taylor was found inside the truck, pinned on the passenger side in the floorboard. Ms. Carter was also in the floorboard near the center. Taylor and defendant were taken to a Lamar hospital. Ms. Carter was pronounced dead at the scene. Her cause of death was determined to be a skull fracture sustained in the accident. Both full and empty cans of beer were found in the cab of the truck.

Defendant was examined in the emergency room by Dr. Russell Kemm. Noticing that defendant was stuporous and had alcohol on his breath, Dr. Kemm ordered that among other blood samples taken, one should be analyzed for alcohol. The blood was examined later at Roche Laboratories in Wichita, Kansas. The technologist found it to contain .202% alcohol by weight. Trial counsel objected to the testimony of the blood test results. The results of the test had been obtained by a search warrant. The basis of the objection relevant to this appeal was that because defendant's blood was taken for medical reasons and not at the direction of a law enforcement officer, defendant "possessed a privacy interest" in the blood. That privacy interest is expressed in the brief on appeal as the physician-patient privilege.

Defendant denied he had told anyone he was the driver of the truck at the time of the collision. However, Dr. Kemm and the owner of the truck both testified that shortly after the accident, but at separate times, defendant admitted to each of them that he was the driver of the truck when the accident occurred.

On the above evidence, defendant was convicted by the trial court. The motion court denied relief from the conviction. The appeals followed.

■ Defendant's first point claims the trial court erroneously admitted the results of the blood test because it was not taken at the direction of a law enforcement officer and was privileged. The claim is somewhat different than that contained in the motion to suppress evidence and the objection at trial. The claim made there was that the results of the blood test were not subject to seizure under a search warrant because defendant "possessed a privacy interest" in the blood drawn for medical purposes while he was not under arrest. The physician-patient privilege was not specifically alluded to at or before trial. Nevertheless, we address the point as argued.

Two statutes are relevant to the first point. Section 491.060(5) provides that among those incompetent to testify is:

A physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon.

Section 577.037.1 provides that upon the trial of any criminal action arising out of acts allegedly committed by an intoxicated person while driving a motor vehicle, "the amount of alcohol in the person's ... blood, breath, saliva or urine is admissible in evidence and the provisions of subdivision (5) of section 491.060, RSMo, shall not prevent the admissibility or introduction of such evidence if otherwise admissible." Defendant's entire argument is founded on his claim that the blood test results were protected by the physician-patient privilege granted by § 491.060(5). He relies on *State ex rel. Mehle v. Harper*, 643 S.W.2d 643 (Mo.App.1982) and *Gozenbach v. Lasky*, 641 S.W.2d 430 (Mo.App.1982). Both cases were apparently decided under law in effect prior to the enactment of § 577.037.[3]

3. *Harper* was decided December 14, 1982. The opinion does not make reference to § 577.037, which became effective June 23, 1982. Considering the rather extensive procedural back-

*Lasky* involved an interrogatory requesting the defendant in a civil action arising out of an automobile accident to disclose the defendant's medical records for the one-week period following the accident. The court noted the physician-patient privilege did not exist at common law and was created by statute, now codified at § 491.060(5). *Id.* at 432. Absent a waiver of the statutory privilege, medical records were held not to be discoverable. *Id.*

In *Gonzenbach v. Ruddy*, 645 S.W.2d 27 (Mo.App.1982), the trial court issued a grand jury subpoena duces tecum for blood alcohol analysis to a hospital where Gonzenbach was treated following a vehicle accident. The subpoena was issued on March 17, 1982. *Id.* at 28. The subpoena was part of a grand jury investigation of the vehicle accident in which Gonzenbach was injured and another individual was killed. *Id.* at 27. The appellate court granted prohibition holding that the statutory physician-patient privilege applied to both civil and criminal cases. *Id.* at 28.

In *Harper* the defendant was taken to a hospital following an injury in a vehicular accident. 643 S.W.2d at 644. A blood sample was drawn and tested for alcohol content by the emergency room physician. Later police learned of the test. Defendant was subsequently charged with driving while intoxicated. A motion for disclosure of blood test results under Rule 25.06 was sustained by the associate circuit judge. *Id.* The associate circuit judge was prohibited by a circuit judge from enforcing the order requiring disclosure of the blood test results. On appeal from the prohibition proceeding, the appellate court affirmed the writ of prohibition relying on *Ruddy*. *Id.*

In *State v. Trice*, 747 S.W.2d 243 (Mo. App.1988), the defendant, a school bus driver, was injured while driving a school bus which was involved in an automobile accident. Two children on the bus were killed in the accident. The defendant, Trice, was taken to a hospital for treatment. A blood sample was drawn by the emergency room

personnel for the purpose of conducting a blood alcohol content test. Police officers interrogated defendant. He refused to voluntarily give blood or urine samples. The children who were on the bus were also questioned. Based on the interviews, police officers sought and obtained a search warrant to obtain blood samples from Trice. Trice was charged and convicted of two counts of involuntary manslaughter. *Id.* at 245. At his trial a hospital technologist was permitted, over defendant's objection, to testify regarding the blood alcohol test performed by the technicians. *Id.* at 247. On appeal Trice asserted violation of the physician-patient privilege relying on *Ruddy* and *Harper*. The court stated:

> The physician-patient privilege is statutory in origin and may be modified or abolished by the Legislature.... Subsequent to *Harper* and [*Ruddy*], the legislature enacted § 577.037.1 which creates an exception to the physician-patient privilege.... The plain language of the statute indicates that the exception to the physician-patient privilege contained in the statute applies to any blood alcohol test results regardless of the circumstances under which they are obtained, so long as they are otherwise admissible.

*Id.*

Defendant would distinguish this case from *Trice*, claiming that he was not under arrest when the blood test was taken and that the test was not administered at the direction of a law enforcement officer. He claims that since the blood test was not taken pursuant to the provisions of the "implied consent statute," § 577.020, the analysis was "not otherwise admissible."

A blood sample analysis is admissible in a criminal trial even without consent when the sample is drawn incident to an accused's valid arrest for an alcohol-related traffic offense. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *State v. Setter*, 721 S.W.2d 11, 16 (Mo.App.1986). Similarly, a blood sample may be seized under a search warrant if it is evidence of the commission

ground in *Harper,* and the failure to mention § 577.037, it is safe to conclude that the original

decision of the trial court predated the effective date of § 577.037.

of a criminal offense. § 542.271.1(1). The test results of such samples are admissible in evidence. *State v. Trice, supra* at 248. It logically follows that the results of alcohol level tests done on blood samples of an accused performed under the direction of the accused's physician are admissible. The absence of consent, implied or otherwise, is not an absolute barrier to the admissibility of the results of a blood test. In this case the admissibility of the blood analysis was not founded on samples obtained pursuant to § 577.020. The results were disclosed by a seizure under a search warrant. Defendant does not contest the fact that there was probable cause to issue the warrant, nor does he claim the warrant was constitutionally invalid. The first point is denied.

■ Defendant's second point asserts that the motion court in the Rule 29.15 proceeding should have found that he was denied effective assistance of counsel on three separate grounds. The first claim deals with the testimony of Richard Taylor. Trial counsel's defense strategy was to infer that Richard Taylor may have been driving the semi-truck at the time of the accident and thus cast doubt on the state's case. Defendant told trial counsel that Taylor had experience driving trucks in Arkansas. However, when trial counsel inquired during cross-examination if Taylor had ever driven a tractor-trailer truck, Taylor denied such experience and claimed not to know how to drive one. Other than that inquiry, trial counsel admitted he did not attempt to find out if Taylor had been employed as a truck driver in Arkansas. Defendant claims that failure amounted to ineffective assistance of counsel.

To succeed on a claim of ineffective assistance of counsel, a defendant must show that counsel failed to exercise the customary skill and diligence a reasonably competent attorney would have exercised under similar circumstances and that defendant was prejudiced by such failure. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

In this case there was no evidence that a more extensive investigation would have disclosed that Taylor knew how to drive a truck like the one involved in the accident. The defendant has the burden of proving that the investigation would have produced evidence which, at the very least, would be helpful to the defense. *Lytle v. State*, 762 S.W.2d 830, 837 (Mo.App.1988). Defendant has failed to establish the prejudice prong of the *Strickland* test. In the absence of any proof that further investigation would have been helpful to the defense, the motion court's finding "that defense counsel adequately investigated and inquired of Rick Taylor as to his ability to drive a semi-tractor trailer" is not clearly erroneous. Rule 29.15(j).

■ Defendant's second claim of ineffective assistance of counsel is that after a plea agreement was rejected, his trial attorney failed to file a motion for change of judge. The motion court found "that a Motion for Change of Judge would have been clearly out of time under the Supreme Court Rule 32.07." Defendant does not now argue that he was entitled to a change of judge under Rule 32.07. He now claims that he was entitled to a change of judge because the trial judge, after learning of the conviction record, refused to accept a plea agreement and also increased defendant's bail bond. Defendant admits that rejection of a plea bargain does not require the judge to disqualify. *State v. Faber*, 499 S.W.2d 790, 793 (Mo.1973); *City of Kansas City v. Wiley*, 697 S.W.2d 240, 244 (Mo.App.1985). Similarly, the trial judge increasing the bail bond does not demonstrate bias against defendant. A trial judge is authorized to modify the conditions of release. Rule 33.06. The judge's regular rulings in the ordinary course of presiding over a judicial proceeding will rarely, if ever, constitute evidence of partiality such as to require him in good conscience to recuse himself. *City of Kansas City v. Wiley, supra*, at 244. Refusal to accept the plea bargain based upon defendant's criminal record, coupled with the increase in the bail bond, does not amount to an egregious loss of temper or control

requiring disqualification. *Id.;* Rule 2, Code of Judicial Conduct Canon 3C(1). Consequently, defendant has failed to show that he would have been entitled to a change of judge had a motion been filed. Failure to file a meritless motion does not constitute ineffective assistance of counsel. *Brayfield v. State,* 738 S.W.2d 579, 582 (Mo.App.1987).

■ Defendant's third complaint under point two is that trial counsel failed to object to the state's use of municipal convictions to impeach defendant. Upon taking the stand, defendant admitted that he was convicted of stealing in 1978 and robbery in 1981. During cross-examination he admitted to two misdemeanor charges of driving while intoxicated in 1986, misdemeanors of passing bad checks in 1981 and 1986, and a misdemeanor charge of driving while his operator's license was revoked in 1982. During cross-examination the following exchange occurred:

Q: Uh, any other misdemeanors?

A: Just traffic violations.

Q: Okay. Uh, how many traffic violations?

A: I don't know. I got 16 on my record.

On that evidence the motion court found that while inadmissible municipal court convictions were used to impeach the defendant, the evidence was "cumulative to the admitted felony convictions which would bear more heavily on his truth and veracity ... movant fails to sustain the burden of proving he was prejudiced."

■ The evidence of guilt in this case is overwhelming. The defendant admitted to at least two felonies and no less than five misdemeanor convictions. Those were the proper subject of inquiry. § 546.260. Where valid and invalid convictions are used to impeach a defendant's credibility and the evidence of guilt is strong, the error is harmless. *State v. Manns,* 745 S.W.2d 768, 776 (Mo.App.1988). The motion court's determination that counsel's failure to object did not result in prejudice is not clearly erroneous.

The final point complains that the motion court violated Rule 29.15(i) by failing to address a ground for relief contained in defendant's pro se motion.

■ Defendant filed three separate pleadings in the Rule 29.15 proceeding. The first was a pro se motion for post-conviction relief filed on June 20, 1988. Among allegations in paragraph 9 was the claim that the trial judge, during the plea bargaining stage, had offered to set punishment at five years, but after trial "the trial court sentenced the defendant to ten years merely to punish the defendant for exercising his right to jury trial." After counsel was appointed to represent defendant in the 29.15 proceeding, counsel sought and was granted an extension of time to file an amended motion. A new motion was filed on September 29, 1988. Paragraph 9 of that amendment purported to incorporate "the facts alleged" in the pro se motion. A second amendment was made completely revising paragraph 9. It did not purport to incorporate any allegations of prior pleadings and made no mention of the allegation noted above in the pro se motion.

The failure to include or incorporate the complaint regarding being punished for exercising his right to jury trial in the last amendment constituted an abandonment of the allegation. A fundamental rule of pleading is that the filing of an amended pleading abandons the original pleading. *Weir v. Brune,* 256 S.W.2d 810, 811 (Mo. 1953). Defendant fails to direct our attention to any exception to that rule applicable here. Accordingly, the court committed no error in failing to address the abandoned claim for relief.

Each of defendant's three points is without merit. The judgment is affirmed.

CROW, P.J., and GREENE, J., concur.